IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| GLENN WILLIAMS, ) | |
| ) | |
| On behalf of himself and all others ) | |
| similarly situated, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 4:13CV2009 CEJ |
| ) | |
| CENTRAL TRANSPORT ) | |
| INTERNATIONAL, INC., and ) | |
| CENTRAL TRANSPORT LLC ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT CENTRAL TRANSPORT LLC'S MOTION FOR SUMMARY JUDGMENT**

COMES NOW Plaintiff Glenn Williams ("Plaintiff"), by and through undersigned counsel, and for Plaintiff's Memorandum in Opposition to Defendant Central Transport LLC's Motion for Summary Judgment, states as follows:[1]

## I. STATEMENT OF FACTS

Plaintiff and those similarly situated worked as dockworkers and spotters for Defendant. Compl. ¶¶13, 24. Defendant is a freight carrier and logistics company with locations throughout the United States. Compl. ¶2. Plaintiff began his employment at Defendant's St. Louis, Missouri location in October 2012 as a dockworker loading freight onto vehicles. *Id*. During his employment with Defendant, he performed a variety of responsibilities that can be broadly characterized into three categories: loading, spotting, and driving. Compl. ¶¶2, 15; Doc. #48-2, Williams Dep.,

---

[1] This brief is filed in response to Defendant Central Transport LLC's Motion for Summary Judgment. [Doc. #92]. A materially similar brief has been also filed in response to Central Transport International, Inc.'s Motion for Summary Judgment. [Doc. #48].

1

120:16-24, 121:22-24. Plaintiff worked as a loader and spotter between October 2012 and May 2013. During this period, Plaintiff performed predominately loading activities from October 2012 through February 2013 and predominately spotting work between February and May 2013. Doc. #48-2, Williams Dep., 79:20-23. At issue in this lawsuit are the hours Plaintiff worked as a loader and spotter without being compensated proper overtime wages pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. 201, *et seq.* Compl., ¶¶1, 13-27.

As a loader, the undisputed facts show Plaintiff was responsible for loading freight on trucks in a manner pursuant to specific instructions from his supervisor and a handheld computerized device called a "scanner." Doc. #48-2, Williams Dep., 81:4-82:19; Doc. #48-11, Hott Dep., 206:23-208:22. Plaintiff operated a forklift to move palates of various types of goods around the loading dock. He would then drive the forklift onto the trailer and load freight in one of two ways. For trailers destined for local, or "city," delivery, Plaintiff would place freight in its eventual delivery order. Ex. C, Williams Declar., ¶¶4-6; Doc. #48-1, Williams Dep., 50:3-8; Doc. #48-2, Williams Dep., 88:1-12; Doc. #48-5, Williams Dep., 49:12-16. In general, Plaintiff would place freight that was to be delivered last towards the front of the truck, near the cab, and place freight that was to be delivered first towards the rear of the truck, near the loading door. Ex. C, Williams Declar., ¶¶4-5; Doc. #48-5, Williams Dep., 49:12-16. Dock supervisors would either inform Plaintiff of the delivery order verbally or reference a written diagram. *Id.* In this way, Plaintiff merely rendered physical assistance to given directives, over which Plaintiff exercised no oversight or decision-making authority. Moreover, Plaintiff's placement of freight was dictated predominantly by the order of delivery, not safety concerns.

For line-haul trailers destined for interstate delivery, Plaintiff would use the scanner to scan freight, then place freight wherever there was room on a trailer, without regard to any other

2

variables. Ex. A, Stmt. Disp. Facts, ¶8; Ex. C, Williams Declar., ¶¶7-9; Doc. #48-2, Williams Dep., 81:4-82:5; Doc. #48-6, Williams Dep., 121:15-25, 123:17-22. After Plaintiff filled the trailer using the first-space-available method, dock supervisors reviewed the placement of freight to determine if it could be reworked to hold more freight or if it was unsafely loaded; dock supervisors would either instruct Plaintiff to rework the freight or they would rework the freight themselves. Ex. A, Stmt. Disp. Facts, ¶¶9-10; Ex. C, Williams Declar., ¶¶7-13; Doc. #48-2, Williams Dep., 81:4-82:19; Doc. #48-11, Hott Dep., 206:23-208:22. Dock supervisors were in charge of balancing and distributing the freight so that the trailers would operate safely in transit. *Id.*

As a spotter, the undisputed facts show that Plaintiff was responsible for driving a spotter vehicle to move empty trailers from the unloading area of the yard to the loading area, and to move loaded trailers into a pooled area with other loaded trailers. Ex. C, Williams Declar., ¶¶18-19. Plaintiff exclusively drove the spotter vehicle around the trailer yard, which is secured and gated; Plaintiff never drove the spotter on roads outside of the yard. Ex. C, Williams Declar., ¶¶18-19.

Dockworkers were compensated on an hourly basis for performing loading and spotting work. Compl. ¶¶14-15; Doc. #48-11, Hott Dep., 235:10-12. Plaintiff alleges he and other similarly situated employees routinely worked in excess of forty hours per work week, but were not compensated at a rate of one-and-one-half times their regular rate of pay for all hours worked in excess of this, in violation of the FLSA. Ex. A, Stmt. Disp. Facts ¶¶3, 6-7; Compl. ¶18. Rather, Defendant's policy was to pay time-and-one-half wages only for hours worked in excess of fifty-five hours per workweek. Doc. #48-7, Williams Dep., 223:7-11; Doc. #48-10, Hott Dep., 190:1-5.

Plaintiff and those similarly situated were non-exempt employees who recorded time worked through the handheld scanners. Compl. ¶¶14-15; Doc. #48-8, Hott Dep., 50:7-10. Plaintiff states that if he and other dockworkers did not scan an item of freight within fifteen minutes of the

3

previous scan, the scanner would log them out of the system and their time worked would not be recorded. Ex. A, Stmt. Disp. Facts ¶2; Compl., ¶21; Doc. #48-1, Williams Dep., 128:18-129:24; 134:22-138:6. Plaintiff frequently informed Defendant that his time was not accurately recorded due to this issue with the scanners, but Defendant made no effort to fix the issue. Ex. A, Stmt. Disp. Facts ¶4; Doc. #48-1, Williams Dep., 69:25-70:15. As a result of Defendant's timekeeping policy, Defendant routinely failed to record all hours worked by Plaintiff and those similarly situated. Ex. A, Stmt. Disp. Facts ¶3; Doc. #48-2, Williams Dep., 133:18-134:17.

There is a material dispute of fact as to the degree Plaintiff exercised independent judgment and discretion in performing his job duties loading freight. Defendant incredulously argues that evidence in the record proves that Plaintiff's freight loading directly affected the safety of operation of the vehicles in interstate commerce. Defendant makes this argument despite the fact that it has not yet produced the testimony of any person who worked with Plaintiff, or anyone with direct knowledge of Plaintiff's actual job duties. Defendant did produce corporate representative Michael Hott for deposition, a human resources administrator for a third-party consulting company retained by Defendant. Doc. #48-9, Hott Dep., 66:24-67:20. Plaintiff's exercise of discretion and independent judgment with respect to the freight loaded onto the trailers is the crux of this legal dispute. As Defendant has proffered no evidence to contradict Plaintiff's description of the work he actually performed, the record clearly reflects a genuine dispute over this question of fact.

Critically, Plaintiff's evidence demonstrates that he simply was not responsible for placing, balancing, or distributing freight in a manner such that the safety of the trailers would not be jeopardized in operation. Ex. A, Stmt. Disp. Facts, ¶10; Ex. C, Williams Declar., ¶¶4, 14; Doc. #48-2, Williams Dep., 81:4-82:5; Doc. #48-4, Williams Dep., 210:24-211:1. Plaintiff strictly loaded freight onto local-bound trailers in the order in which the freight was to be delivered, and

4

strictly loaded freight onto line-haul trailers based on space availability. Ex. A, Stmt. Disp. Facts, ¶¶8, 9; Ex. C, Williams Declar., ¶¶5-10; Doc. #48-5, Williams Dep., 49:12-16; Doc. #48-6, Williams Dep., 121:15-25, 123:17-22. Dock supervisors were responsible for ensuring a well-balanced and evenly-distributed load and frequently directed Plaintiff to rework the trailer, or would rework it themselves. Ex. A, Stmt. Disp. Facts, ¶11; Ex. C, Williams Declar., ¶¶11-13; Doc. #48-4; 210:24-211:1; Doc. #48-11, Hott Dep., 206:23-208:22. Plaintiff strictly followed supervisors' instructions, who regularly monitored Plaintiff's work. Ex. A, Stmt. Disp. Facts ¶2; Doc. #48-2, Williams Dep., 81:4-10. A reasonable jury could thus find in favor of Plaintiff based on the evidence in the record.

Defendant has not met its heavy burden to show that no genuine issue of material fact exists for trial. While Defendant argues that Plaintiff identified and reported problems with a trailer's tires, axles,[2] and brakes, Plaintiff disputes these facts because he in fact used no independent judgment or discretion to analyze defects, other than reporting a blatantly obvious concern such as a trailer leaning heavily to one side or a flat tire. Plaintiff controverts Defendant's argument that Plaintiff had the responsibility to ensure the safe loading of freight onto trailers and that doing so positively impacts public safety. Ex. A, Stmt. Disp. Facts, ¶¶10-13, Ex. B, Resp. to Stmt. Uncontr. Facts, ¶¶41-43; Ex. C, Williams Declar., ¶¶14-17. Further, to the extent Defendant argues that Plaintiff was responsible for identifying safety issues, this had nothing to do with the actual loading of freight. *Id.*

Defendant also argues that because Plaintiff had received training *prior* to starting his employment with Defendant regarding appropriate weight limits for trailers, he somehow

---

[2] While Paragraphs 25-26 of Defendant's Statement of Uncontroverted Materials Facts state that Plaintiff was responsible for identifying and reporting problems with a trailer's axles, this is a gross misrepresentation of Plaintiff's testimony. Plaintiff testified that loaders were unable to notice problems with a trailer's axles, unless something was sticking out of an axle, as they were not responsible for pre-tripping trailers. Doc. #48-1, Williams Dep., 57:3-9.

5

exercised independent judgment with respect to loading freight in a manner that ensured the safety of Defendant's trailers. Defendant's argument lacks any relevant or logical connection to Plaintiff's actual job tasks while working for Defendant. Plaintiff learned many things from many jobs prior to starting his employment with Defendant. The fact of the matter is that whatever prior knowledge he had regarding trailer weight limits did not actually impact his job with Defendant, as he was strictly responsible for following supervisors' instructions when loading freight, not for knowing the weight of the loaded freight or using that knowledge to improve safety in the first place. Ex. A, Stmt. Disp. Facts, ¶¶11-12, Ex. B, Resp. to Stmt. Uncontr. Facts, ¶¶22-28

Plaintiff also controverts Defendant's claim that it did not willfully violate the FLSA. Plaintiffs have presented evidence indicating that Defendant's policies effectively required Plaintiffs to perform work without compensation, rebuffed Plaintiff's reported concerns regarding the uncompensated work, and made no effort to fix the issue with the scanners. Ex. A, Stmt. Disp. Facts, ¶¶3-5; Doc. #48-1, Williams Dep., 69:25-70:15; Doc. #48-7, Williams Dep., 166:25-167:3. In addition, Defendant made no effort to ascertain the actual job duties being performed by Plaintiff and those similarly situated when they were classified across-the-board as exempt from the FLSA under the Motor Carrier exemption. Ex. A, Stmt. Disp. Facts, ¶7; Doc. #48-11, Hott Dep., 228:10-19. Case law clearly supports the proposition that an employer's awareness of possible violations of the FLSA, together with an indifference toward the requirements imposed by the statute, supports a finding of willfulness. At the very least, a material dispute of fact exists as to this point. Defendant has also admitted in another related litigation that all employees, whether loaders, spotters, or janitors, were required to view the same safety video, that was not tailored to an individual employee's actual or expected job responsibilities.

Finally, discovery is still ongoing. Defendant has recently amended its initial disclosures

to include an expert witness report to which Plaintiff has not had the opportunity to rebut. The expert report introduces contradictory evidence to that already in the record regarding a loader's responsibility to ensure the safety of freight in interstate commerce. Ex. A, Stmt. Disp. Facts, ¶10; Ex. C, Williams Declar., ¶¶14-17. Plaintiff anticipates that Defendant may try to rely on this expert report in its Reply brief. However, doing so would be procedurally improper. As Defendant is still introducing controverted evidence, summary judgment is premature at this stage in litigation.

## II.     LEGAL STANDARD

A party may move for partial summary judgment on claims or defenses, or parts thereof. FED. R. CIV. P. 56(a). Summary judgment is proper only when the undisputed facts established by the pleadings, depositions, interrogatory responses, admissions, and affidavits, if any, "show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." FED. R. CIV. P. 56(a)-(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of showing "an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. Without weighing the evidence or determining credibility, the court may grant summary judgment when no genuine issue of material fact exists as to an issue and the movant is entitled to judgment as a matter of law. *Celotex*, 377 U.S. at 322; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

Summary judgment is to be granted only if no genuine issue exists as to any material fact. *Hass v. Weiner,* 765 F.2d 123, 124 (8th Cir. 1985). In applying this standard, the Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 588–89 (1986); *Tyler v. Harper,* 744 F.2d 653, 655 (8th Cir. 1984), *cert. denied*, 470 U.S. 1057 (1985).

### III.     ARGUMENT

**A.     As a Loader, Plaintiff Did Not Exercise Sufficient Discretion and Independent Judgment with Respect to Loading Freight in a Manner That Directly Affected the Safe Operation of Vehicles to Fall Within the Motor Carrier Exemption.**

Defendant argues that the hours its dockworkers work over 40 hours per week are not compensable work time as a matter of law. In support, Defendant claims Plaintiff falls within the Motor Carrier exemption to the FLSA. The record, however, indicates that Plaintiff's actual job duties do not bring him within the ambit of the Motor Carrier exemption. Given the fact-intensive nature of the Motor Carrier exemption coupled with the disputed issues of fact between the parties, this Court should deny Defendant's motion.

Section 13(b)(1) of the FLSA, commonly called the Motor Carrier exemption, provides that the statute's overtime requirements do not apply "to any employee with respect to whom the Secretary of Transportation has power to establish qualification and maximum hours of service pursuant to the provisions of section 31502 of Title 49." 29 U.S.C. § 213(b)(1). In assessing the applicability of the motor carrier exception to the FLSA, the court must be mindful that exemptions "from humanitarian and remedial legislation such as the Fair Labor Standards Act must be narrowly construed, giving due regard to the plain meaning of the statutory language and the intent of Congress." *A.H. Phillips, Inc. v. Walling,* 324 U.S. 490, 493 (1945). As with all exemptions to the FLSA, the burden of proof with respect to the applicability of an exemption rests upon the party asserting the exemption. *Walling v. General Industries Co.*, 330 U.S. 545, 547-48 (1947); *Graham v. Town & Country Disposal of W. Missouri, Inc.,* 865 F. Supp. 2d 952, 956 (W.D. Mo. 2011). The Eighth Circuit strictly construes "all exemptions" to the FLSA, and the defendant must establish the exemption applies by a preponderance of the evidence. *Yellow Transit Freight Lines*, *Inc. v. Balven,* 320 F.2d 495, 497 (8th Cir. 1963).

U.S. Department of Labor regulations apply the Motor Carrier exemption to the FLSA depending "both on the class to which [the employee's employer] belongs and on the class of work involved in the employee's job." 29 C.F.R. § 782.2(a). To fall within the Motor Carrier exemption, an employer must show it meets three criteria: 1) that it is an employer under the jurisdiction of the Secretary of Transportation; 2) that the employee is a driver, driver's helper, loader, or mechanic; and 3) that the employee engages "in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce." *Graham,* 865 F. Supp. 2d at 956.

With respect to the above criteria, Plaintiff does not dispute Defendant is an employer subject to the Secretary of Transportation's jurisdiction. However, Plaintiff disputes that his actual job duties directly affect the safety of Defendant's vehicles in transportation in interstate commerce. In support, Plaintiff has put forth substantial evidence in the summary judgment record.

It is well settled that "it is the character of the activities rather than the proportion of either the employee's time or of his activities that" determines whether the Motor Carrier exemption applies to an employee's job classification. *Morris v. McComb*, 332 U.S. 422, 431 (1947). Thus, the U.S. Department of Labor Regulations interpreting the "loader" classification of the Motor Carrier exemption state that the exemption only applies if each Plaintiff's work (1) was defined as that of a "loader," and (2) directly affected the safety of operation of motor vehicles in interstate commerce within the meaning of the Motor Carrier Act. 29 C.F.R. § 782.5(b); *Pyramid Motor Freight Corp. v. Ispass*, 330 U.S. 695, 706–08 (1947); *McBeth v. Gabrielli Truck Sales, Ltd.*, 768 F.Supp.2d 383, 391 (E.D.N.Y. 2010). Conversely, if an employee does not perform the work of a loader, the exemption does not apply to him because his activities cannot affect the safe operation of vehicles in interstate commerce. *Troutt v. Stavola Bros.*, 107 F.3d 1104, 1107 (4th Cir. 1997).

9

The U.S. Department of Labor regulation specifically states that a loader must have "responsibility when such motor vehicles are being loaded, for exercising judgment and discretion in planning and building a balanced load or in placing, distributing, or securing the pieces of freight in such a manner that the safe operation of the vehicles on the highways in interstate or foreign commerce will not be jeopardized." 29 C.F.R. § 782.5(c). The loader's impact on vehicle safety must be more than just minor or happenstance. The regulation specifically excludes employees whose handling of freight has too trivial of an impact on the safety of a vehicle:

> mere handling of freight at a terminal, before or after loading, or even the placing of certain articles of freight on a motor carrier truck may form *so trivial, casual, or occasional a part of an employee's activities*, or his activities may relate only to such articles or to such limited handling of them, that his activities will not come within the kind of "loading" which directly affects 'safety of operation.'

29 C.F.R. § 782.5(c) (emphasis added), quoting, *Pyramid Motor Freight*, 330 U.S. at 708. Strictly construing this exemption, federal courts around the country have declined to grant summary judgment to a defendant employer where, as here, the evidence indicates the employee's actual job duty of loading freight has a minor effect on the safety of vehicles in operation. *See, e.g., McBeth v. Gabrielli*, 768 F.Supp.2d at 391 (denying employer's motion for summary judgment, holding that the Motor Carrier exemption did not apply to an employee who loaded freight onto trailers, as the employee's only safety-affecting duties were "common sense," such as not loading all heavy freight on one side of the vehicle and attempting to distribute the weight so that the trailer would be roughly balanced); *Billingslea v. S. Freight, Inc.*, 699 F. Supp. 2d 1369, 1379 (N.D. Ga. 2010) (holding that the Motor Carrier exemption did not apply to employees who performed loading activities but utilized no discretion with respect to the placement of freight and its impact on the safety of the trailer in transit, and reported merely obvious mechanical issues with a trailer); *Williams v. R.W. Cannon, Inc.*, No. 08-60168, 2008 WL 4097613, at *11 (S.D. Fla. Sept. 4, 2008)

10

(holding that a material factual dispute existed as to the discretion an employee exercised in loading freight, when the employer merely asserted that the employee "had to be concerned" about the weight of pallets loaded onto trailers and other evidence indicated that the employee simply loaded freight into designated spaces based on supervisors' instructions or in any available space); *Cf. Vaughn v. Watkins Motor Lines, Inc.*, 291 F.3d 900, 904-05 (6th Cir.2002) (finding that employees' activities fell within the U.S. Department of Labor's definitions of a "loader" when the employees acknowledged they exercised their own judgment as to the best way to load a trailer and prepared diagrams that designated any hazardous materials in the trailers).

Here, the summary judgment record clearly reflects that Plaintiff did not exercise his own discretion and independent judgment with respect to loading freight onto Defendant's vehicles in a manner that directly affected the safe operation of vehicles in interstate commerce. Plaintiff's evidence shows that he was responsible for loading freight either based on delivery order (for local-bound trailers) or space availability in the trailer (for line-haul trailers). Both of these factors pertain to the quick and efficient delivery of freight contained within a trailer, not safety. Plaintiff did not exercise independent judgment and discretion regarding the manner in which freight would be safely loaded for transport. Dock supervisors were responsible for reviewing Plaintiff's loaded freight for safety-related issues; to the extent a supervisor believed the freight was not safely loaded or secured, he or she would either instruct Plaintiff to redistribute the freight or do it themselves. Effectively, Plaintiff merely rendered physical assistance to pre-ordained directives, placing freight in a convenient place, and nothing more. At the very least, the degree to which Plaintiff placed, distributed, and balanced freight is a question of fact, a dispute over which is plainly evidenced in the record. Accordingly, summary judgments is inappropriate at this stage.

To the extent Plaintiff had *any* effect on the safety of the trailers, the record plainly reflects

11

it was to engage in "common sense" decisions, such as not loading extremely heavy freight on just one side of the trailer or loading heavy liquids on top of other freight. Such a minor activity is not enough to bring an employee within the Motor Carrier exemption; otherwise, *any* employee would be subject to the exemption. For example, in *Billingslea v. S. Freight*, the employer did not require or permit an employee to "install, adjust, repair, or maintain any parts on the trucks and trailers that he moved around the distribution facility yard." 699 F. Supp. 2d at 1369. The employer did require the employee to perform brief inspections of vehicles for "maintenance issues like flat tires or broken taillights and to report such problems," but these facts did not convince the court to classify the employee as a "loader" covered under the Motor Carrier exemption. *Id.*

Similarly, here, Plaintiff was responsible for reporting obvious issues with a trailer that he happened to notice. As in *McBeth*, this is simply not enough to meet the statutory standard of exercising discretion in a manner that directly impacts the safety of the vehicles in interstate commerce, as it is *de minimis* and trivial. When Plaintiff actually loaded the freight onto vehicles, he was not responsible for placing, distributing, or balancing the freight in a manner that would not jeopardize the safe operation of the trailer in transit.

Further, Plaintiff's sworn declaration and Mr. Hott's own deposition testimony both provide support for the fact that dock supervisors were ultimately responsible for ensuring the safety of the vehicle with respect to the loaded freight. Supervisors would frequently change the order of the freight Plaintiff loaded onto the vehicle based on safety concerns. Supervisors would also monitor the loading process in real-time, directing Plaintiff where to place freight as he was loading it. Plaintiff followed the directives of his supervisors and exercised no discretion as to where to place freight, let alone in a manner cognizant of the safety of the vehicle in transit. These are outcome determinative issues for which there is a genuine dispute reflected in the record.

Defendant makes much of the fact that Plaintiff had prior knowledge of truck safety procedures prior to joining Defendant. Notably, Plaintiff's prior knowledge of axle distribution, braking issues, etc. all stem from training *he received elsewhere at a different company.* Were knowledge of these issues truly integral to Plaintiff's job duties at Central Transport, Defendant would have provided its own training on these specific issues to loaders. Notably, no evidence in the record indicates such training occurred or that loaders were expected to come in with prior trucking experience and safety knowledge. Instead, it is apparent that despite Plaintiff's prior knowledge of truck safety, Defendant expected Plaintiff to defer to his supervisors' judgment regarding the "safest" loading and placement of the freight.

**B.      Plaintiff's Activities as a Spotter Do Not Fall Within the Motor Carrier Exemption.**

As a spotter, Plaintiff was responsible for driving a spotter vehicle around Defendant's yard to move empty trailers to the loading area of the dock. Plaintiff would then move loaded trailers into a holding area, where they would await a driver to attach his cab to the trailer. Defendant's yard was secured and gated, and Plaintiff never operated the spotter vehicle on public roadways. These activities are insufficient to classify Plaintiffs under any Motor Carrier exemption.

To affect safety of operations of vehicles in interstate commerce, an employee must perform the activities of a "driver," "driver's helper," "loader," and "mechanic" affect the safety of operations of motor vehicles, and no others. *Pyramid*, 330 U.S. at 706-08. Defendant seems to argue that Plaintiff's activities as a spotter qualify him as a "loader" within the Motor Carrier Act. However, when performing the duties of a spotter, Plaintiff was not responsible for loading the trailers. No Motor Carrier exemption clearly encompasses Plaintiff's activities as a spotter.

In *Buscarino v. TQ Logistics, Inc.*, No. CIV.A. 0:08-3882-JFA, 2010 WL 3211708 (D.S.C. Aug. 11, 2010), employees were responsible for driving a spotter vehicle to locate empty trailers

and drop them off at the loading dock, and after a trailer is loaded, tow the trailer back to the trailer pool. The activities were mostly performed within a secured, gated lot inaccessible to the public. *Id.* at *1. The court analyzed the employees' duties under the "driver" classification. *Id.* To be a "driver" pursuant to the Motor Carrier exemption, an employee must operate a commercial vehicle on a roadway open to public travel. *Id.*; 49 C.F.R. § 390.5. The court ruled that the employees could not be classified as "drivers" for any activities performed wholly within the employer's yard, as they never travelled on public roadways. *Buscarino* at *4.

Similarly, here, Plaintiff's spotting duties were limited to Defendant's yard. Plaintiff never used the spotter vehicle on the open roads. The "loader" exemption would not apply, as that exemption does not contemplate spotting activities. As the evidence in the record demonstrates that Plaintiff's spotting activities plainly do not qualify for the "driver" exemption either, just as in *Buscarino*, the Court should deny Defendant's motion for summary judgment.

**C.      Genuine Issues of Material Fact Preclude Summary Judgment on the Question of Whether Defendant Willfully Violated the FLSA.**

There are triable issues of material fact regarding whether Defendant's conduct of violating the FLSA was willful. Generally, suits under the FLSA must be commenced within two years, except suits arising out of a willful violation may be commenced within three years after the cause of action accrued. 29 U.S.C. § 255(a); *Jarrett v. ERC Props., Inc.*, 211 F.3d 1078, 1082 (8th Cir. 2000). The U.S. Supreme Court defines "a 'willful' violation as one where 'the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.'" *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 132 (1988). In turn, federal regulations provide an employer acts with "reckless disregard" if the employer "should have inquired further into whether its conduct was in compliance with the Act, and failed to make adequate further inquiry." 29 C.F.R. § 579.2. Whether a violation is willful is an issue of fact, often addressed

14

during summary judgment or at trial. *Littlefield v. Dealer Warranty Servs., LLC,* 679 F. Supp. 2d 1014, 1019 (E.D. Mo. 2010). All of the facts and circumstances surrounding the violation shall be taken into account in determining whether a violation was willful. 29 C.F.R. § 579.2.

As a threshold manner, Defendant's purported reliance on a U.S. Department Labor and Missouri Department of Labor ("MO DOL") are unfounded. First, while Central Transport's corporate representative, Michael Hott, stated Defendant was investigated by the U.S. Department of Labor at its facility in Illinois, it is unclear from Hott's testimony what (if anything) the Department conclusively determined with respect to the positions at issue. To the extent Defendant asserts the U.S. Department of Labor actually determined its switchers and loaders are exempt under the Motor Carrier exemption, Hott's testimony is inadmissible hearsay to establish an investigator's conclusions. Moreover, Hott claimed the U.S. Department of Labor investigation pertained to just one of Defendant's locations, a Chicago-area facility at which Plaintiff did not work. Doc. #48-11, Hott Dep., 232:13-23.

Second, to the extent the MO DOL conducted a separate investigation, it is unclear what relevance (if any) the investigation has on the issues in this lawsuit. For instance, Hott's deposition testimony is unclear as to what the MO DOL actually investigated and what conclusions it made. Doc. #48-11, Hott Dep., 223:9-224:5. Moreover, he indicated that the MO DOL merely determined that Defendant did not violate Missouri's wage laws, which has nothing to do with whether loaders and switchers are exempt from the FLSA under the Motor Carrier exemption. *Id.* at 225:1-6. Even assuming the MO DOL rendered any opinion pertaining to the status of loaders and switchers, it would have been pursuant to the Missouri Wage and Hour Law, as opposed to the FLSA. In short, the MO DOL opinion does not negate whether Defendant willfully violated the FLSA.

Furthermore, Hott's testimony made it clear that Defendant acted pursuant to its own past

15

practice of classifying loaders and switchers as exempt as opposed to any governmental opinion or guidance. Indeed, Hott indicated the federal and state investigations by the U.S. Department of Labor and MO DOL were "subsequent" to Defendant's decision to classify switchers and loaders as exempt under the Motor Carrier exemption. *Id.* at 222:22. Moreover, when asked what Defendant considered in determining whether the employees at issue were exempt under the FLSA, Hott cited Defendant's past practices as the "foundation" of its decision:

> Q: What did Central Transport look at to make that determination in deciding that these employees were exempt?
>
> A: Central Transport's been in business for a long time and the dockworker, switcher, trailer load safety yard controller [loader], their titles may change and the job descriptions may add additional information, but the core, they're also still responsible for loading and unloading this freight, and all of the freight that they're going to touch is interstate commercial freight. So I don't know a specific document, but I know that that's the foundation of how they've been classified.

*Id.* at 228:7-19. Defendant has also made no showing regarding how it analyzed the actual job duties of loaders, let alone Plaintiff's actual job duties, or how it concluded that loaders do not exercise independent judgment and discretion with respect to safely loading freight. Plaintiff's evidence that Defendant employed a uniform policy of not compensating loaders who clearly perform non-exempt work is more than sufficient to establish a genuine issue of material fact whether Defendant willfully violated the FLSA.

Under the FLSA, an award of liquidated damages is proper "unless the employer can show good faith and reasonable grounds for believing that it was not in violation of the FLSA." *Jarrett*, 211 F.3d 1078 at 1082. "The same facts that support a determination that a defendant has not acted 'willfully' for statute of limitations purposes can also be used to determine that a defendant should not be liable for liquidated damages." *Boyle v. Barber & Sons, Co.*, No. 03-0574-CV-W-FJG, 2005 WL 6561489, at *5 (W.D. Mo. Mar. 4, 2005). Based on the same set of facts above, Defendant's

alleged reliance on a federal and state investigation into its employee classification system is irrelevant. Further, Defendant has made no showing that it took any affirmative step to ascertain the FLSA's requirements in classifying Plaintiff's job. The record reflects no evidence that Defendant analyzed Plaintiff's actual job duties when classifying his job, and so Defendant has not proved that it had a good faith basis for believing it was not violating the FLSA. Accordingly, Defendant has not met its burden to rebut the FLSA's mandatory imposition of liquidated damages.

**D.      Defendant's Should Be Precluded from Introducing Any New Evidence to Establish Its Entitlement to Summary Judgment.**

While Defendant originally moved for summary judgment on October 13, 2014, it has made continual efforts to changes the evidentiary grounds to support its Motion. For instance, on November 11, 2014, Defendant filed a supplemental statement of additional facts while Defendant's response deadline was tolling. Doc. # 76. When Plaintiff moved to strike this improper addition to Defendant's summary judgment pleading, Defendant fought to maintain the supplemental statement of facts only to voluntarily dismiss it two months later. Docs. #81, 89.

Notably, Defendant supplemented its Rule 26(a)(2) disclosures on February 12, 2015—eleven days before Plaintiff's responses to Defendants' motions for summary judgment were due. As part of its initial disclosures, Defendants have tendered a purported expert report regarding whether Plaintiff's job tasks implicate "public safety" under the Motor Carrier exemption. Given Defendants' past conduct, Plaintiff anticipates Defendants may k to introduce the expert report in their reply briefs for their summary judgment motions. Defendant's transparent attempt to bolster additional support for its misclassification decisions merely demonstrates the insufficiency of Defendant's summary judgment arguments. The Court should prohibit any attempts by Defendant to introduce this expert report. As a threshold issue, Plaintiff has not had the opportunity to rebut the expert report. Moreover, Plaintiff has already met his burden to establishing a triable issue of

material fact regarding whether his job duties impacted the safety of interstate commerce. Ex. A, Stmt. Disp. Facts, ¶10; Ex. C, Williams Declar., ¶14-17. To the extent Defendants seeks to introduce new evidence, doing so only serves to add more material facts in dispute.

## IV.     CONCLUSION

The summary judgment record plainly reflects several genuine disputes of material fact. Plaintiff's evidence demonstrates that his actual job duties as a loader did not directly affect the safety of operation of vehicles in interstate commerce, as he did not exercise discretion or independent judgment when loading, balancing, or distributing freight on trailers. Furthermore, as Defendant did not inquire into Plaintiff's actual job duties when classifying him, it engaged in a willful violation of the FLSA. Accordingly, a three-year statute of limitations should apply, and Plaintiff is entitled to liquidated damages. A reasonable jury could look at the evidence introduced so far and rule in favor of Plaintiff. To the extent Defendant attempts to undermine the existing evidence with newly-tendered discovery, the Court should disregard Defendants' efforts.

WHEREFORE, Plaintiff respectfully requests that this Court deny Defendant's Motion to Dismiss in its entirety, and for other such further relief as this Court deems necessary and proper.

Respectfully submitted,

By:     /s/ *Kevin J. Dolley*
Kevin J. Dolley, #54132MO
Laura Spencer Garth, #61645MO
Jason K. Lewis, #66725MO
LAW OFFICES OF KEVIN J. DOLLEY, LLC
2726 S. Brentwood Blvd.
St. Louis, MO 63144
(314)645-4100 (office)
(314)736-6216 (fax)
kevin@dolleylaw.com
laura.garth@dolleylaw.com
jason.lewis@dolleylaw.com

*Attorneys for Plaintiff and those similarly situated*

**CERTIFICATE O F SERVICE**

      I hereby certify that on February 23, 2015, a true and correct copy of the foregoing has been served on the following individuals consenting to electronic service by operation of the Court's electronic filing system:

M. Reid, Estes, Jr.,
Darrell L. West,
Jonathan R. Patton,
424 Church Street, Suite 1401
Nashville, TN 37219
REstes@dickinson-wright.com
DWest@dickinson-wright.com
JPatton@dickinson-wright.com

Sheena R. Hamilton,
7700 Forsyth Blvd., Suite 1800
St. Louis, Missouri 63105
shamilton@armstrongteasdale.com

                                                  */s/ Kevin J. Dolley*