UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| GLENN WILLIAMS, on behalf of himself and all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case No. 4:13-CV-2009 (CEJ) ) |
| CENTRAL TRANSPORT INTERNATIONAL, INC., and CENTRAL TRANSPORT LLC, | ) ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on defendants' motions for summary judgment pursuant to Fed. R. Civ. P. 56(a). Plaintiff has responded in opposition, and the issues are fully briefed.

**I.  Background**

Defendant Central Transport LLC, the successor entity to defendant Central Transport International, Inc. (collectively "Central Transport"), is a motor carrier that provides transportation and logistics services to 98% of the major manufacturing areas in North America, and that engages in the shipment of freight in interstate commerce. From October 2012 to August 2013, plaintiff Glen Williams worked as a loader and spotter for Central Transport. His job duties and responsibilities included loading and unloading line-haul trailers used in interstate travel.

Plaintiff filed this action on behalf of himself and others similarly situated, alleging that defendant willfully violated the Fair Labor Standards Act (FLSA), 29

U.S.C. §§ 201, *et seq.*, by maintaining improper overtime policies and recordkeeping practices. Plaintiff alleges that defendant had a uniform policy of providing overtime compensation for hours worked in excess of fifty-five hours per week, instead of the required forty hours per week, and that its electronic timekeeping system did not record all hours actually worked.

Defendants filed the instant motions for summary judgment, asserting that undisputed material facts establish that plaintiff is exempt from the FLSA's overtime provisions. In the alternative, defendants assert that Central Transport did not willfully violate the FLSA, but instead acted in good faith and upon reasonable grounds for believing that it was not in violation of the FLSA.

## II. **Legal Standard**

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered if the moving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the court is required to view the facts in the light most favorable to the non-moving party, giving that party the benefit of all reasonable inferences to be drawn from the underlying facts. AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). If the moving party meets its burden, the non-moving party may not rest on the allegations of its pleadings, but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists.

2

Gannon Intern., Ltd. v. Blocker, 684 F.3d 785, 792 (8th Cir. 2012); Gibson v. American Greetings Corp., 670 F.3d 844, 853 (8th Cir. 2012). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Matsushita Elec. Industrial Co.., 475 U.S. at 587).

### III. Discussion

#### A. The Motor Carrier Act Exemption

Under the FLSA, an employee who works in excess of 40 hours per week generally is entitled to compensation for the excess hours at the rate of one-and-a-half times his regular pay. 29 U.S.C. § 207(a)(1). This FLSA provision is inapplicable, however, to "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49." 29 U.S.C. § 213(b)(1). Under 49 U.S.C. § 31502(b), the Secretary of Transportation may prescribe requirements for the qualifications and maximum hours of service for employees and for the safe operation and equipment of motor carriers and private motor carriers. This exemption is commonly referred to as the "Motor Carrier Act" (MCA) exemption. McCall v. Disabled Amer. Veterans, 723 F.3d 962, 964 (8th Cir. 2013). Central Transport argues that plaintiff is exempt from the FLSA's overtime provisions pursuant to the MCA exemption, and thus defendants are entitled to judgment as a matter of law.

Department of Labor regulations apply the MCA exemption depending "both on the class to which [the employee's] employer belongs and on the class of work involved in the employee's job." Graham v. Town & Country Disposal of W. Mo.,

3

Inc., 865 F. Supp. 2d 952, 956 (W.D. Mo. 2011) (quoting 29 C.F.R. § 782.2(a)). An employee is subject to the MCA exemption only if: (1) the employer is a motor carrier whose transportation activities are subject to the jurisdiction of the Secretary of Transportation; (2) the employee is a driver, driver's helper, loader or mechanic; and (3) the employee engages "in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce." Id.; 29 C.F.R. § 782.2(a)-(b).

Employers relying on an exemption to avoid the minimum wage and overtime requirements of the FLSA bear the burden of proving that an exemption applies. Fast v. Applebee's Intern., Inc., 638 F.3d 872, 882 (8th Cir. 2011) (citing Corning Glass Works v. Brennan, 417 U.S. 188, 196-97 (1974)). Because the FLSA is remedial in nature, exemptions to the general provisions of the FLSA are construed narrowly against the employer. Wells v. Fedex Ground Package Sys., Inc., 979 F. Supp. 2d 1006, 1034 (E.D. Mo. 2013); see also Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392 (1960) (stating that employers must establish that the employee falls "plainly and unmistakably within the term and spirit" of the exemption). "The question of how [plaintiff spent his time working for defendants] is a question of fact. The question of whether [his] particular activities excluded [him] from the overtime benefits of the FLSA is a question of law." Icicle Seafoods, Inc. v. Worthington, 475 U.S. 709, 714 (1986).

With respect to the elements of the MCA exemption set forth above, the parties do not dispute that Central Transport is a motor carrier whose transportation activities are subject to the Secretary of Transportation's jurisdiction.

Thus, the first element is met. Central Transport has the burden of proving that the second and third elements of the MCA exemption are met in this case: specifically, that plaintiff was a "loader" as defined by the MCA and that he engaged in activities directly affecting the safety of operations of motor vehicles within interstate commerce. 29 C.F.R. § 782.2(b)(2); see also Pyramid Motor Freight Corp. v. Ispass, 330 U.S. 695, 706, 707-08 (1947) (noting that only "loaders" involved in the safe operation of the vehicle being loaded are covered by the MCA exemption). In dispute here is whether plaintiff's actual job duties directly affected the safety of Central Transport's vehicles in transportation in interstate commerce. In determining whether a specific employee falls within the MCA exemption, "neither the name given to his position nor that given to the work that he does is controlling; what is controlling is the character of the activities involved in the performance of his job." § 782.2(b)(2). Furthermore, "the determination of whether or not an individual employee is within any such classification is to be determined by judicial process." Id.

For purposes of the MCA exemption, the Department of Labor regulations define a "loader" as an employee "whose duties include, among other things, the proper loading of his employer's motor vehicles so that they may be safely operated on the highways of the country." 29 C.F.R. § 782.5(a). A "loader" engages in work directly affecting "'safety of operation' so long as he has responsibility when such motor vehicles are being loaded, for exercising judgment and discretion in planning and building a balanced load or in placing, distributing, or securing the pieces of freight in such a manner that the safe operation of the vehicles on the highways in interstate or foreign commerce will not be jeopardized." Id.

5

An employee is not exempt as a loader when his handling of freight is "so trivial, casual, or occasional" that his activities do not directly affect "safety of operation." § 782.5(c). For example, the following activities provide no basis for exemption: unloading, placing freight in convenient places in the terminal, loading vehicles for trips that do not involve transportation in interstate commerce, and activities relating to the preservation of the freight as distinguished from the safety of operation of the motor vehicles carrying such freight. Id. As such, "an employee who has no responsibility for the proper loading of a motor vehicle is not within the exemption of a 'loader' merely because he furnishes physical assistance when necessary in loading heavy pieces of freight, or because he deposits pieces of freight in the vehicle for someone else to distribute and secure in place, or even because he does the physical work of arranging pieces of freight in the vehicle where another employee tells him exactly what to do in each instance and he is given no share in the exercise of discretion as to the manner in which loading is done." Id.

The parties disagree as to whether plaintiff's job duties required him to exercise the degree of judgment and discretion necessary to be considered a "loader." In his response to the instant motion, plaintiff states that he was responsible for loading freight on trucks pursuant to specific instructions from his supervisor and a handheld computerized device called a "scanner." For line-haul trailers destined for interstate delivery, plaintiff states that he would use the scanner to scan the freight, and then place freight wherever there was room in a trailer without regard to any other variables. After plaintiff filled the trailer using the "first-space-available" method, dock supervisors reviewed the placement of

6

freight to determine if it could be reworked to hold more freight or if it was unsafely loaded.  Dock supervisors would then either instruct plaintiff to rework the freight or rework the freight themselves.  Plaintiff argues that he merely rendered physical assistance to pre-ordained directives, placing freight in a convenient place and nothing more.  Plaintiff claims that dock supervisors were solely in charge of balancing the distributing the freight so that the trailers would operate safely in transit.  To the extent he had any effect on the safety of the trailers he loaded, plaintiff states that he made "common sense" decisions, such as not loading heavy freight on just one side of the trailer or loading heavy liquids on top of other freight.

Defendants contend that when plaintiff initially started loading line-haul trailers, he would simply place the freight on the trailer and a more experienced dockworker would properly load the freight on the trailer for safe transport in interstate commerce.  However, as plaintiff became more experienced, he learned to load and place freight where it was supposed to be located on the trailer for safe transport.  Defendants note that plaintiff was trained as to proper techniques for loading line-haul trailers, such as placing or distributing containers of liquid and the proper building and installation of decking systems.  Furthermore, plaintiff understood that improper weight distribution could impact a tractor-trailer's braking ability or potentially cause a tractor-trailer to jackknife.

After reviewing plaintiff's deposition transcripts, the Court finds no genuine dispute of material fact as to plaintiff's status as a "loader" and the direct effect his job duties had on the safety of Central Transport's vehicles in transportation in interstate commerce.

The parties do not dispute that when plaintiff first started working at Central Transport, he initially placed freight designated for a particular line-haul trailer wherever it fit on that trailer, and more experienced lead workers would rework the trailer to fit it properly. Williams' 7/1/14 Dep., at 82:3-83:25, 85:13-86:11 [Doc. #48-1-4] (hereinafter "July Dep."); Williams' 10/9/14 Dep., at 121:15-122:5 [Doc. #48-5-7] (hereinafter "Oct. Dep."). At that time, plaintiff did not know how to arrange decks. Oct. Dep., at 122:12-15. However, plaintiff "learned . . . as [he] would go" from supervisors helping him and telling him what was correct and incorrect loading. Id. at 123:2-12. Once he became experienced, he learned how to install a decking system on a trailer. July Dep., at 96:7-24. When plaintiff loaded freight incorrectly, a supervisor would tell him what he did wrong and he avoided making the same mistake again by using the proper loading technique the next time he was in a similar situation. Id. at 82:20-83:11. If plaintiff had a question about whether something could be stacked or loaded safely or securely, he would ask a supervisor. Oct. Dep., at 144:3-13. After receiving instruction from a supervisor, he "knew enough not to throw [the freight] on any kind of way." Id. at 123:13-21. Plaintiff was expected to learn the proper loading techniques and load the freight where it was supposed to be on the truck. Id. at 125:18-126:1. The first few months plaintiff worked at Central Transport, the ratio of leads to dockworkers was one to five or seven. Id. at 113:15-25. After February 2013, the disparity increased to one lead on the floor for every 12 or more dockworkers. Id. at 113:25-114:15.

Additionally, it is undisputed that plaintiff was not assigned to work on a team and unloaded and loaded freight by himself. Id. at 118:7-25, 129:10-24.

8

Supervisors did not follow him around and watch him unload and reload freight. Id. at 120:4-12. Plaintiff loaded different kinds of freight that was not uniform in terms of size, weight, or shape. Id. at 139:17-140:1. He also loaded hazardous materials, including corrosives, flammables, and gases. Id. at 144:15-146:17. Freight loaded on line-haul trailers, in contrast to freight loaded on city trailers for local transportation, did not have a predestined order or designated place on the trailer. July Dep., at 84:6-85:25, 88:1-12, 89:11-23; Oct. Dep., at 45:24-49:16. Line-haul trailers were loaded high and tight while city trailers were floor-loaded in order of delivery. July Dep., at 88:1-90:24. When loading top-heavy freight, plaintiff would brace it and block it with other freight or load bars to load it securely to prevent it from falling over. Oct. Dep., at 141:17-142:22. Plaintiff would not load a heavier piece of freight directly on top of a lighter piece of freight. Id. at 147:7-14. He knew that a container of liquid was too heavy to be placed on top of a decking system and always placed such containers on the bottom. Id. at 156:2-157:25; July Dep., at 82:3-83:25. When plaintiff saw safety defects in the trailers, such as a broken door, flat tire, or defective brakes, he reported the safety hazard to a supervisor. July Dep., at 56:9-58:22, 211:18-23. Unless he notified management of defects he found in the trailers, they would be unaware of the problem. Id. at 212:24-213:3.

The undisputed evidence demonstrates that plaintiff was "not told exactly where to place every item on a trailer, but instead 'exercised significant discretion in performing [his] task of loading freight.'" Vaughn v. Watkins Motor Lines, Inc., 291 F.3d 900, 905 (6th Cir. 2002) (quoting Blankenship v. Thurston Motor Lines, Inc., 415 F.2d 1193, 1197 (4th Cir. 1969)). His job duties included loading freight

on line-haul trailers used in interstate commerce, and "the fact that he often loaded the delivery trucks by himself indicates that he exercised the required judgment and discretion in 'placing, distributing, or securing the pieces of freight' in a manner meant to ensure the efficient and safe operation of the delivery trucks." Rodriguez v. Pan & Plus Baking, LLC, No. 12-23193-CIV (FAM), 2013 WL 1681839, at *6 (S.D. Fla. Apr. 17, 2013). Plaintiff engaged in more than mere physical assistance; instead, he was responsible for using his discretion to build a balanced and safe load by placing and distributing freight safely on line-haul trailers.

For example, plaintiff made discretionary decisions about whether to load freight at the front or at the back of the trailer, which side of the trailer on which to load freight based on its weight, and whether freight could or could not be stacked. See Lucas v. NOYPI, Inc., No. H-11-1940 (SL), 2012 WL 4754729, at *7 (S.D. Tex. Oct. 3, 2012) (contrasting plaintiffs' discretionary loading activities to workers in Wirtz v. C & P Shoe Corp., 336 F.2d 21, 29 (5th Cir. 1964), "who followed a simple 'last out, first in' method of loading and unloading," and thus were "merely furnishing physical assistance" and "were not acting as loaders because of the utter lack of discretion involved in those activities"); Pravia v. Blasa Grp., Inc., No. 06-22775-CIV (JLK), 2008 WL 821611, at *3 (S.D. Fla. Mar. 27, 2008) (finding that plaintiffs merely provided physical labor since they did not make discretionary decisions "that would obviously go into *placement* of a load from maneuverability on the public highways") (emphasis in original). The freight consisted of different shapes, sizes and weight, and did not fit in designated slots on the trailer. Cf. Williams v. R.W. Cannon, Inc., No. 08-60168-CIV (UU), 2008 WL 4097613, at *10 (S.D. Fla. Sept. 4, 2008) (finding plaintiff did not exercise discretion when he

"simply placed batteries on pallets and then moved the pallets with a forklift and placed them in designated spaces on the trucks" where the pallets would fit). Furthermore, his "decision as to when or whether he needed to find a supervisor was plainly an act of discretion affecting the safety of the motor vehicle." Wedel v. Old Dominion Freight Line, Inc., No. 97-C-8891 (MIS), 1998 WL 704347, at *2 (N.D. Ill. Sept. 24, 1998).

As in Vaughn and Blankenship, plaintiff argues that because he was closely supervised and dock supervisors were ultimately responsible for the safety of the vehicles, he had no independent responsibility for the safe operation of the trucks onto which he loaded freight. However, while "[it] is true that [plaintiff was] supervised, that is, [he was] told which trucks to load and [his] work was checked," these factors "do not render inconsequential the initial discretion exercised by [plaintiff]." Blankenship, 415 F.2d at 117; see also Rodriguez, 2013 WL 1681839, at *6 (finding that occasional guidance and instruction from a supervisor did not remove plaintiff's ability to exercise judgment and discretion in carrying out his freight loading duties). Even though a dock lead would take a picture of every load before the trailer was sealed and sent off, the lead did not inspect the entire load. July Dep., at 212:5-213:12. Instead, the lead would simply make sure the trailer was ready for shipment in terms of the freight that was supposed to be on the trailer. Id. at 213:4-12. "The significance of [plaintiff's job duties and] activities is not diminished by virtue of the fact that the supervisors . . . checked the trailers before they were closed and on occasion told [plaintiff] how to load the freight." Vaughn, 291 F.3d at 905. Rather, as noted in Mitchell v. Hill & Hill Truck Line, Inc.:

> Certainly every workman is responsible for doing his job well, even though his labor may be supervised closely and checked for accuracy by his supervisors. If safety depended upon the supervision and checking of the 'boss,' no one could depend upon the safety of trucks that were not so checked. Rather, safety depends upon the efforts of loaders who know [] what they are doing, who do the job the way it is to be done, and who are responsible for their actions.

183 F. Supp. 463, 466-67 (S.D. Tex. 1960); see also Wedel, 1998 WL 704347, at *4 ("Although [plaintiff] surely received some supervision while loading and although he was not the only person ensuring the safety of the motor carrier, it is factually untenable for him to assert that he acted completely without discretion. [Plaintiff] admits that he often worked without the aid of a supervisor and that he made independent decisions regarding where to place freight and how to secure it."). Therefore, "at least where, as here, the employee retains some appreciable discretion in conducting the loading operation in the first instance, his employer is exempt from the overtime provisions of the FLSA." Blankenship, 415 F.2d at 117.

### B. Plaintiff's Post-Deposition Declaration

Plaintiff attempts to create a dispute of material fact by attaching a post-deposition declaration to its response to defendant's statement of uncontroverted material facts. [Doc. #103-1]. In his declaration, plaintiff states "[i]n my actual job duties loading freight for outbound or line-haul trailers, I was directed to place freight anywhere that it fits." Id. at ¶8. "I was not responsible for ensuring the safety of the freight with respect to its placement, balance, or distribution on the trailer. I did not exercise my own discretion or judgment in placing freight." Id. at ¶9. In evaluating the merits of a summary judgment motion and opposition to it, affidavits filed by the parties must meet the requirements of Rule 56(e) of the Federal Rules of Civil Procedure. A court can "consider only admissible evidence

and [must] disregard portions of various affidavits and depositions that were made without personal knowledge, consist of hearsay, or purport to state legal conclusions as fact." Howard v. Columbia Public School Dist., 363 F.3d 797, 801 (8th Cir. 2004).

It is well-established in the Eighth Circuit that an affidavit filed in opposition to a summary judgment motion that directly contradicts earlier deposition testimony is insufficient to create a genuine issue of material fact. Camfield Tires, Inc. v. Michelin Tire Corp., 719 F.2d 1361, 1365 (8th Cir. 1983) ("If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own earlier testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact."). "Post-deposition contradictory affidavits are admitted only when the prior deposition testimony shows confusion, and the subsequent affidavit helps to explain the contradiction." Popoalii v. Corr. Med. Servs., 512 F.3d 488, 498 (8th Cir. 2008).

Plaintiff did not exhibit confusion in his prior deposition testimony, and his declaration does not purport to clarify any confusion or contradiction in his deposition testimony. Rather, by filing an inconsistent declaration, plaintiff attempts to create a disputed issue of fact regarding the degree of discretion or judgment he exercised in loading freight on line-haul trailers. The Court does not find this declaration to create genuine issues of fact since it directly contradicts earlier, clear deposition testimony.

### IV. Conclusion

For the reasons discussed above, the Court concludes that that plaintiff is exempt from the FLSA's overtime provisions. Therefore, the defendants are entitled to judgment as a matter of law.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motions for summary judgment pursuant to Fed. R. Civ. P. 56(a) [Doc. ## 48, 92] are **granted**.

**IT IS FURTHER ORDERED** that all other pending motions are **moot**.

A separate Judgment in accordance with this Memorandum and Order will be entered.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 13th day of May, 2015.